UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

    Plaintiff,

v.

3234 Washington Avenue North, Minneapolis,
Minnesota, Hennepin County, with all buildings,
fixtures, improvements and appurtenances thereto,

    Defendant.

Civ. No. 03-5765 (JNE/FLN)
ORDER

James S. Alexander, Esq., Assistant United States Attorney, Office of the United States Attorney for the District of Minnesota, appeared for Plaintiff United States of America.

Deborah Ellis, Esq., appeared for Claimant Minnesota Church of Angels.

The United States of America (Plaintiff) alleges that real property located at 3234 Washington Avenue North, Minneapolis, Minnesota (Property), is subject to forfeiture because the property was used to commit or facilitate violations of federal drug laws and because it was obtained with proceeds from unlawful drug transactions. *See* 21 U.S.C. § 881(a)(6)-(7) (2000). The case is before the Court on Plaintiff's Motion for Default Judgment, Summary Judgment and Final Order of Forfeiture. For the reasons set forth below, the Court grants the motion.

## I.    BACKGROUND

The Minnesota chapter of the Hell's Angels Motorcycle Club (Minnesota HAMC) was founded in 1982. Members of the Minnesota HAMC incorporated the Minnesota Church of Angels in 1985. The Minnesota Church of Angels and the Minnesota HAMC are essentially the same.

In 1995, the Minnesota Church of Angels purchased the Property on a contract for deed for use as the Minnesota HAMC's clubhouse.  Before and after the Property's acquisition by the Minnesota Church of Angels, several members and associates of the Minnesota HAMC were convicted in the United States District Court for the District of Minnesota on drug charges, including conspiracy to distribute methamphetamine, conspiracy to distribute cocaine, conspiracy to distribute marijuana, possession with intent to distribute methamphetamine, and distribution of cocaine.  In 2002, the Minnesota Church of Angels satisfied the contract for deed and obtained a warranty deed.  The next year, Plaintiff brought this action.

Plaintiff asserts that the Property is subject to forfeiture because the Property was used to commit or facilitate violations of federal drug laws and because it was obtained with proceeds from drug transactions.  *See* 21 U.S.C. § 881(a)(6)-(7).  According to Plaintiff, members of the Minnesota HAMC used the Property to distribute drugs, and members and associates of the Minnesota HAMC regularly and openly used drugs at the Property.

After filing the action, Plaintiff served the Minnesota Church of Angels and Hennepin County with a summons and complaint.  Plaintiff also published a "Notice of Complaint for Forfeiture" in *Finance and Commerce* on November 19, November 26, and December 3, 2003. No claims and answers other than those of Hennepin County and the Minnesota Church of Angels were filed.  Plaintiff and Hennepin County later entered into a stipulation for payment of real estate taxes whose terms are contingent on forfeiture of the Property to Plaintiff.  Plaintiff now moves for default judgment against all unknown persons and entities having an interest in the Property, for summary judgment against the Minnesota Church of Angels, and for a final order of forfeiture.

## II.   DISCUSSION

A.   **Default judgment**

Plaintiff asserts default judgment should be entered against all unknown persons and entities having an interest in the Property. A person who asserts an interest in property that is subject to civil forfeiture must timely file a verified statement of claim and an answer. *See* 18 U.S.C. § 983(a)(4) (2000); Rule C(6), Supplemental Rules for Certain Admiralty and Maritime Claims. In this case, no verified statements of claim and answers have been filed other than those of Hennepin County and the Minnesota Church of Angels. Accordingly, the Court grants Plaintiff's motion for a default judgment against all persons and entities having an interest in the Property other than Hennepin County and the Minnesota Church of Angels.

B.   **The Minnesota Church of Angels' claim**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

1. *Strike claim*

Plaintiff first argues it is entitled to summary judgment on the Minnesota Church of Angels' claim because the claim should be stricken. Plaintiff asks the Court to strike the Minnesota Church of Angels' claim because two members of the Minnesota HAMC, Keith Hare and Richard Bethune, responded to almost all questions posed at their depositions by asserting the Fifth Amendment privilege against self-incrimination. Hare is the Minnesota HAMC's vice-president. He verified the claim submitted by the Minnesota Church of Angels and attested to the Minnesota Church of Angels' answers to Plaintiff's interrogatories. Bethune is the Minnesota HAMC's president. Based on Hare's and Bethune's invocation of the Fifth Amendment at their depositions, Plaintiff contends that the Minnesota Church of Angels improperly invoked the privilege against self-incrimination. As a result, Plaintiff argues, the Minnesota Church of Angels' claim should be stricken.

From Plaintiff's heavy reliance on *General Dynamics Corp. v. Selb Manufacturing Co.*, 481 F.2d 1204 (8th Cir. 1973), the Court infers that Plaintiff proceeds under Rule 37(b) of the Federal Rules of Civil Procedure. Under Rule 37(b), a district court may sanction a party by dismissing a claim where: (1) the court issued an order compelling discovery; (2) the order was willfully violated; and (3) the other party was prejudiced. *Keefer v. Provident Life & Accident Ins. Co.*, 238 F.3d 937, 940 (8th Cir. 2000). In this case, Plaintiff did not respond to Hare's and Bethune's depositions with a motion to compel. Consequently, neither an order compelling discovery nor a willful violation of the order exists. In addition, the Court is unable to assess the prejudice experienced by Plaintiff. Plaintiff did depose William Test, the Minnesota HAMC's treasurer and the witness produced by the Minnesota Church of Angels under Rule 30(b)(6) of the Federal Rules of Civil Procedure, and the Minnesota Church of Angels acknowledges it

4

cannot assert the privilege against self-incrimination. *See Braswell v. United States*, 487 U.S. 99, 102 (1988); *In re Grand Jury Witnesses*, 92 F.3d 710, 712 (8th Cir. 1996). Under these circumstances, dismissal of the Minnesota Church of Angels' claim under Rule 37(b) is not appropriate. *See Keefer*, 238 F.3d at 940; *Gen. Dynamics*, 481 F.2d at 1209-13 (affirming district court's order striking defendants' counterclaims and affirmative defenses where defendants failed to comply with district court's orders compelling discovery).

    *2.    Use of the Property to commit or facilitate violations of federal drug laws*

Plaintiff next argues it is entitled to summary judgment on the Minnesota Church of Angels' claim because the Property was used to commit or facilitate violations of federal drug laws.[1] *See* 21 U.S.C. § 881(a)(7). Under federal law, it is unlawful for any person knowingly or intentionally "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." *Id*. § 841(a)(1). It is also unlawful (1) to "knowingly . . . maintain any place . . . for the purpose of manufacturing, distributing, or using any controlled substance"; or (2) to "manage or control any place . . . and knowingly and intentionally . . . make available for use . . . the place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance." *Id*. § 856(a). Real property used to commit or facilitate violations of federal drug laws is subject to forfeiture. *Id.* § 881(a)(7).

Forfeiture proceedings under section 881 are subject to the provisions of the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), 18 U.S.C. § 983. *See United States v. Dodge Caravan Grand Sport SE/Sport Van*, 387 F.3d 758, 760-61 (8th Cir. 2004). Under CAFRA, Plaintiff bears the burden of demonstrating by a preponderance of the evidence that the property is subject

---

[1]     Plaintiff does not seek summary judgment on the ground that the Property was purchased with proceeds from unlawful drug transactions.

5

to forfeiture. 18 U.S.C. § 983(c)(1); *Dodge Caravan*, 387 F.3d at 761; *United States v. $84,615 in U.S. Currency*, 379 F.3d 496, 501 (8th Cir. 2004). Where, as here, the government contends the property was used to commit or facilitate the commission of a crime, the government must establish a substantial connection between the property and the crime. 18 U.S.C. § 983(c)(3); *Dodge Caravan*, 387 F.3d at 761.

In this case, Plaintiff submitted evidence that indicates the Property was used to facilitate the distribution of methamphetamine and the use of methamphetamine and cocaine. For example, Paul Matter testified that he dealt cocaine and methamphetamine while he was Minnesota HAMC's president from 1982 to 2003 and that most members of the Minnesota HAMC dealt drugs. He distributed relatively large quantities of drugs to certain members of the Minnesota HAMC and they in turn distributed smaller quantities to other members. Although the Property was not a preferred location to distribute drugs, Matter testified that he distributed a pound or a half-pound of methamphetamine there on several occasions. He specifically recalled distributing methamphetamine to Paul Seydel, Jerry Bokina, Jay Rankin, Steve Jacobson, John Dierks, and Ralph Schluter at the Property at various times between 1995 to 2003.

Past members of the Minnesota HAMC testified about drug use at the Property. For instance, Matter testified that he was at the Property three or four times per week from 1995 to 2002, that drugs were present in at least personal use quantities "pretty much every time," and that members often shared drugs with other members there. Richard Rohda, a member of the Minnesota HAMC for ten years starting in approximately 1993, testified that drugs were "always" present at the Property and that members openly used drugs there.

Individuals who were never members of the Minnesota HAMC also testified about drug use at the Property. For example, Jacob Dailey stated that he visited the Property with his

stepfather, Jerry Schiro, "maybe" ten to fifteen times and that he saw methamphetamine used there in 1999: "They had approximately a half pound of methamphetamine on the table, they were just taking it and cutting it in lines, putting it on the bar doing lines." According to Dailey, Matter was present when Dailey saw the methamphetamine. Christopher Tolck visited the Property approximately ten times and saw members of the Minnesota HAMC using crystal methamphetamine and cocaine. Joseph Pitino, who worked on the Property's driveway, stated he "[d]id a few lines" of cocaine at the Property's bar with others during a break. He also testified that he attended a party at the Property, that about 500 people were at the party, that drugs were used at the party, and that "they were handing out drugs to people."

The results of a search of the Property also support Plaintiff's assertion that drug use took place there. According to the affidavit of Chris Omodt, a Lieutenant with the Hennepin County Sheriff's Office, law enforcement officers executed a search warrant at the Property on April 13, 2001. During the search, officers discovered William Folsom on a couch in a small room. Approximately 0.75 grams of methamphetamine and a straw for snorting methamphetamine were on a coffee table directly in front of Folsom.

In addition to the evidence of drug use and distribution detailed above, there is evidence that individuals who worked on the Property were compensated, in part, with drugs. For instance, Matter testified that the Property was extensively renovated after its acquisition in 1995, that some of the labor for the renovations "was traded in drugs," and that he gave methamphetamine to laborers while they were working. According to James Flett, he did construction work at the Property over the course of approximately 18 months. Initially, he was paid in cash. Later, he received compensation in form of methamphetamine. As noted above, Pitino worked on the Property's driveway. He testified that he was paid in cash and cocaine.

Besides the evidence of drug use and distribution at the Property, Plaintiff asks the Court to draw adverse inferences based on Hare's and Bethune's assertion of the privilege against self-incrimination in response to questions at their deposition regarding drug use and distribution at the Property. An adverse inference may be made against a claimant who asserts the privilege against self-incrimination in a civil forfeiture proceeding. *United States v. U.S. Currency in the amount of $119,984.00*, 304 F.3d 165, 177 (2d Cir. 2002); *United States v. $141,770.00 in U.S. Currency*, 157 F.3d 600, 606 (8th Cir. 1998); *United States v. Two Parcels of Real Property Located in Russell County, Ala.*, 92 F.3d 1123, 1129 (11th Cir. 1996); *see Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) ("[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them."); *Cerro Gordo Charity v. Fireman's Fund Am. Life Ins. Co.*, 819 F.2d 1471, 1480-82 (8th Cir. 1987) (same). An adverse inference may also be warranted where, as here, the person who asserted the privilege is not a party. *See LiButti v. United States*, 107 F.3d 110, 123-24 (2d Cir. 1997); *Cerro Gordo*, 819 F.2d at 1480-82. Given Hare's and Bethune's positions in the Minnesota HAMC, Hare's role in this litigation, and, presumably, the compatibility of interests of Hare, Bethune, and the Minnesota Church of Angels with respect to this litigation, Hare's and Bethune's assertion of the privilege against self-incrimination could give rise to adverse inferences. *See LiButti*, 107 F.3d at 123-24; *Cerro Gordo*, 819 F.2d at 1480-82. The Court nevertheless declines to draw the inferences that Plaintiff seeks.

The adverse inferences that Plaintiff seeks are permissive. *See In re Carp*, 340 F.3d 15, 23 (1st Cir. 2003) ("[I]n a civil proceeding, the drawing of a negative inference is a permissible, but not an ineluctable, concomitant of a party's invocation of the Fifth Amendment."); *Daniels v. Pipefitters' Ass'n Local Union No. 597*, 983 F.2d 800, 802 (7th Cir. 1993) (agreeing that "the

8

inference against a witness that may be drawn from the invocation of the Fifth Amendment is permissive"). A permissive inference permits but does not require the finder of fact to draw a particular conclusion. *First Dakota Nat'l Bank v. St. Paul Fire & Marine Ins. Co.*, 2 F.3d 801, 813 (8th Cir. 1993). Because the Court must draw all reasonable inferences in the Minnesota Church of Angels' favor at this stage of the litigation, the Court declines to draw the adverse inferences Plaintiff seeks. *See LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 391 n.7 (7th Cir. 1995) ("Treating the Segubans' silence as a separate piece of evidence and drawing inferences against the Segubans on the basis of that fact seems to be in tension with the ordinary summary judgment rule that all reasonable inferences must be drawn in favor of the nonmovant."); *see also Stichting Ter Behartiging Van De Belangen Van Oudaandeelhouders in Het Kapitaal Van Saybolt International B.V. v. Schreiber*, 407 F.3d 34, 55 (2d Cir. 2005) (distinguishing jury's ability to draw adverse inference based on invocation of Fifth Amendment from court's ability at summary judgment).

Although the Court declines to draw the adverse inferences Plaintiff seeks, the Court concludes that Plaintiff has submitted evidence that indicates the Property was used to facilitate the use and distribution of methamphetamine and cocaine. This evidence, if undisputed, satisfies Plaintiff's burden of demonstrating the Property is subject to forfeiture.

The Minnesota Church of Angels asserts that a genuine issue of material fact exists as to whether the Property was used to facilitate violations of federal drug laws.[2] In support, the

---

[2] The Minnesota Church of Angels also argues at length about the credibility of some witnesses relied on by Plaintiff. A court "must not weigh evidence or make credibility determinations" in ruling on a motion for summary judgment. *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003); *see Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 783-84 (8th Cir. 2004) ("At summary judgment, because we view the facts in the light most favorable to the non-moving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses.").

9

Minnesota Church of Angels relies on affidavits and depositions of several individuals. For instance, Paul Seydel, a member of the Minnesota HAMC since 1982 and its vice president from 1987 to 2002, testified that he never saw drugs or anyone using drugs at the Property and that Matter never delivered drugs to him at the Property. Seydel's broad disclaimer of drug activity at the Property is undermined, however, by his relatively limited contact with it. *See Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 982 (8th Cir. 2004) (disregarding deposition testimony where witness lacked personal knowledge). He testified that he was present during the Property's renovation two or three times per week, that he was not very involved with the renovations, and that he has been at the Property at least twice per week since 1995. For present purposes, the Court assumes that Seydel did not see drugs at the Property when he was there and that Matter did not deliver methamphetamine to him there. Seydel's testimony, however, is insufficient to create a genuine issue of material fact as to whether Matter distributed methamphetamine at the Property to others or whether the Property was otherwise used to facilitate drug activity. *See Jackson v. Anchor Packing Co.*, 994 F.2d 1295, 1304 (8th Cir. 1993) (stating conclusory testimony insufficient to avoid summary judgment).

Similarly, William Test, a member of the Minnesota HAMC since 1995 and its treasurer, testified that he never saw drugs being used or distributed at the Property during its renovation or at any other time. Like Seydel, Test had limited contact with the Property. He stated that "he tried staying away from that [the renovations] as much as [he] could," that he was at the Property "[m]aybe once a week, twice a week" during the renovations, that he had no involvement with Pitino's work on the Property's driveway, and that he has not been "too active" in going to the Property since 1998. Like that of Seydel, Test's testimony does not create a genuine issue of material fact as to whether the Property was used to facilitate drug activity. *See id.*

10

As to whether renovations to the Property were performed in exchange for drugs, Hans Brenner, who left the Minnesota HAMC after the Property's acquisition, stated that he performed electrical work as part of the Property's renovation, that "[t]o the best of his knowledge" nobody received drugs as compensation for performing renovations, that he "never saw large quantities of drugs" at the Property, and that he never saw drug transactions there. The Court assumes for present purposes that Brenner did not see "large quantities of drugs" or drug transactions at the Property. However, his statement that nobody received drugs as compensation for performing renovations is not admissible because the affidavit demonstrates neither his personal knowledge of others' compensation nor his competence to testify about their compensation. *See Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 635 n.20 (8th Cir. 2000); *Causey v. Balog*, 162 F.3d 795 803 n.4 (4th Cir. 1998). Brenner's affidavit does not create a factual dispute as to whether renovations were performed on the Property in exchange for drugs. The Court turns to the Minnesota Church of Angels' arguments regarding Flett and Pitino.

The Minnesota Church of Angels asserts that Flett's testimony does not establish that the Property was used to facilitate violations of federal drug laws. The Court disagrees. As noted above, Flett testified that he did construction work at the Property and that he received compensation in the form of methamphetamine. According to Flett, both John Quigley, who was attempting to join the Minnesota HAMC, and Matter paid Flett with methamphetamine. As to Pitino, the Minnesota Church of Angels notes that he testified Mark Platt, who was attempting to join the Minnesota HAMC, gave him the cocaine in exchange for working on the driveway.[3]

---

[3] The Minnesota Church of Angels also relies on the affidavit of Julie Davison, a private investigator, to establish that renovations to the Property were not performed in exchange for drugs. In her affidavit, Davison recounts telephone interviews she conducted with several individuals. The affidavit is hearsay and the Minnesota Church of Angels has not explained how

11

The Minnesota Church of Angels has not demonstrated the existence of a genuine issue of material fact as to whether renovations were performed in exchange for drugs.

Turning to evidence of drug use at the Property, the Minnesota Church of Angels discounts the testimony of Dailey, Tolck, and Pitino. Jerry Schiro, Jacob Dailey's stepfather, acknowledged that he visited the Property with Dailey, albeit on fewer occasions than Dailey stated. Schiro's affidavit states: "At no time when I was at the [Property] with Jacob did I see any large quantities of controlled substances such as Jacob alleged under oath, i.e. claiming to have seen approximately half a pound of methamphetamine." Similarly, Matter testified that he did not recall being at the Property with Dailey in the presence of one half pound of methamphetamine. Although this testimony reveals a dispute as to the amount of methamphetamine in Dailey's presence, it does not give rise to a dispute as to whether methamphetamine was present. As to Tolck, the Minnesota Church of Angels asserts his testimony is imprecise as to dates and persons present. The Minnesota Church of Angels has not, however, created an issue of fact as to what Tolck saw, namely the use of crystal methamphetamine and cocaine at the Property. With regard to Pitino, the Minnesota Church of Angels asserts Matter contradicted his testimony. Matter stated that 500 people would not fit in the Property. Asked whether drugs were handed out to people who came to parties at the Property, Matter testified that "sometimes members took them back and gave them lines," but that drugs were not handed out as grab bags to people who attended the parties. In short, the Minnesota Church of Angels has not come forward with evidence that demonstrates a genuine issue of material fact exists as to whether the Property facilitated drug use.

---

it is admissible. *See* Fed. R. Evid. 801-803. Accordingly, the Court declines to consider it. *See Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 728 (8th Cir. 2001).

In sum, the Court's review of the record reveals that Plaintiff satisfied its burden of establishing by a preponderance of the evidence that the Property is subject to forfeiture. Plaintiff established a substantial connection between the Property and the use and distribution of methamphetamine and cocaine. The Minnesota Church of Angels has not demonstrated a genuine issue of material fact as to whether the Property is subject to forfeiture. Viewed in the light most favorable to the Minnesota Church of Angels, the record reveals that the Property was used by the Minnesota HAMC to commit or facilitate violations of federal drug laws, namely the use and distribution of methamphetamine and cocaine. The Court therefore grants Plaintiff's motion for summary judgment on the Minnesota Church of Angels' claim. The Property is subject to forfeiture.

### III.   CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Plaintiff's Motion for Default Judgment, Summary Judgment and Final Order of Forfeiture [Docket No. 49] is GRANTED.

2. Default judgment is entered against all unknown persons and entities having an interest in the Property.

3. Summary judgment is entered against the Minnesota Church of Angels.

4. All right, title, and interest of the defaulted persons and entities and of the Minnesota Church of Angels in the Property is forfeited to Plaintiff.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: January 27, 2006

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge